## EXECUTOR OF DANIEL HENRY, DECEASED, *ads.* TUNIS DILLEY.

1. In an action against executors for a distributive share of an estate, it is not necessary to aver in the declaration that a refunding bond had been tendered and filed. It is for the defendants, if they insist upon it, to plead the omission in abatement.

2. A husband cannot recover a legacy or bequest to his wife, if he has not reduced it to possession, or done any act indicative of an intention to reduce it to possession, prior to the 4th of July, 1852, when the act for better securing the property of married women took effect.

3. Prior to the act of 1852, the marriage contract operated as a conveyance or gift by the wife to her husband of all her choses in action, subject to the condition that he should reduce them to possession during the coverture.

4. This is not a vested, but only a contingent interest in the husband under the contract; until the condition is performed, the property remains in the wife.

5. The act of 1852, operates to secure to the wife all personal property in which she had, at the time it took effect, an exclusive vested interest; it bars and intercepts the suspended or inchoate right of the husband to acquire an interest in such property by any proceeding after the act took effect.

---

On demurrer to narr.

The case was argued *ex parte,* at the February term, 1855, before the CHIEF JUSTICE, and Justices OGDEN and POTTS, by *Ransom,* in support of the demurrer.

The facts sufficiently appear in the opinion of the court, delivered by

POTTS, J. The action is brought by Dilley against the executor of Henry, to recover the one sixth part of the residue of the testator's estate, which was bequeathed to the plaintiff's wife, who is the daughter of the testat r.

The bequest was of a distributive share in the residue of the testator's estate. The declaration alleges that Henry died on or about May 1, 1850, the appointment of the defendant as executor, and that he took upon himself the burthen of executing the will; that goods and chattels of said Henry, to the amount of $10,000, came to his hands, as executor, to be administered, on the 30th December, 1853; that said executor filed his final account in the Orphans Court of the county of Somerset, in the term of December, 1853, stating that there was a balance in his hands of $3731.85, to be distributed according to the directions of the will; and that said Orphans Court, on the 30th December, 1853, ordered and decreed that the sum of $663.64, being one-sixth of the residue of the estate, should be paid to Nancy Henry, wife of Tunis Dilley, the plaintiff, whereby an action hath accrued to the plaintiff, &c.

This suit was brought in 1854. On the 25th March, 1852, an act was passed for the better securing the property of married women, the second section of which provides, " that the real and personal property, and the rents, issues, and profits thereof, of any female now married shall not be subject to the disposal of her husband, but shall be her sole and separate property, as if she were a single female, except so far as the same may be liable for the debts of her husband, heretofore contracted, by any legal lien."

The declaration is in the usual form in debt, but does not aver that a refunding bond had been tendered or filed. The defendant demurs generally, and two points are now made for the demurrant.

1. That the declaration is defective for not averring the execution and tender, &c., of a proper refunding bond. 2. That since the act of March, 1852, no action can be maintained by the husband for a legacy or bequest to the wife.

I. As to the first point. It may be considered as settled since *Cowell* v. *Oxford's Ex.*, 1 *Halst.* 432, that no such averment is necessary in the declaration. The third section of the act for the more speedy recovery of legacies, *Rev Stat.* 358, provides, that if no such bond as the statute requires is filed or tendered before suit brought, the process for want thereof shall abate ; and it was held in the above case, that the right to insist upon the refunding bond is vested in the executor, for his security, and may be waived by him. If he does not choose to waive it, he may plead the omission in abatement.

II. The next question is, whether the husband can recover this legacy or bequest to his own use, he not having reduced it into possession, or done any act indicative of an intention to reduce it into possession, prior to the 4th of July, 1852, at which time the act for the better securing the property of married women went into operation, and became part of the law of the state. The language of the act is very plain. It speaks of females now married (not hereafter to be married), and enacts, in absolute, unqualified terms, that the property of such married females (not property hereafter acquired) shall be their own, their sole and separate property as if they were single, subject only to the husband's debts theretofore contracted by any legal lien.

Where the intention of the legislature is plain, it is undoubtedly the duty of the courts to give effect to that intention, unless it is in conflict with the constitution. Prior to the act of 1852, the marriage contract operated as a conveyance or gift, by the wife to the husband, of all her choses in action, subject to the single condition that he should reduce them into possession during the coverture. *Roper on Husband and Wife*, 32 *Law Lib.* 129.

But it is well settled that this is not a vested, but only a contingent interest in the husband under the contract ; that the condition is a condition precedent, and until it is

performed the property remains the property of the wife; that if he die in her lifetime without having performed the condition, the property remains hers, and does not go to his personal representatives; that if she die before him, and a suit is necessary to recover the possession, such suit can only be maintained by him as her administrator; and when recovered, the property remains in his hands liable, as assets, to the payment of her debts. These are familiar principles. *Clancy's Husb. and Wife*, 4, 11, 113; *Strong* v. *Smith*, 1 *Metc.* 476; 2 *Kent's Com.* 145; 4 *Kent's Com.* 202.

In *Clarke* v. *McCleary*, 12 *Sm. & Mar.* 347, the action was brought by the heir at law of a deceased wife to recover from the surviving husband certain slaves which the wife had inherited from her father, but which the husband did not reduce into possession until after the passage of the act of Mississippi in 1839, by which act it was provided, that "when any woman, during coverture, shall become entitled to or possessed of slaves, by conveyance, gift, inheritance, distribution, or otherwise, such slaves, together with their natural increase, shall enure and belong to the wife, as her separate property;" and it was held by the Court of Errors and Appeals in that state, that all the husband had was a qualified right, upon condition that he should reduce the slaves into possession during the coverture; that this was a condition precedent, and that the estate could not vest in him until the condition was performed; and the act being passed before the condition was performed, it intercepted the right of the husband; that the statute was not obnoxious to the charge that it was retrospective, since it did not purport to operate on rights absolutely vested, but on those which, though inchoate, had not been consummated, and which, at most, were contingent and conditional.

In *Price* v. *Sessions*, 3 *Howard* 624, certain personal property was bequeathed by a father to his daughter, to be delivered to her at the age of eighteen, if she lived to

that age. She married Sessions when she was but sixteen. Before she arrived at eighteen, the act of Mississippi, referred to in *Clarke* v. *McCleary*, was passed. And it was held by the Supreme Court of the United States, on writ of error, that the wife took the property exempt from the husband's debts; for that until she became eighteen, the legacy did not vest in her, nor could it vest in the husband until he reduced it to possession; and neither event happened before the passage of the law.

In the first of the above cases, the wife had a vested interest in the property prior to the passage of the act; in the second, the wife's interest was contingent, and did not vest until after the act took effect. In both cases the act was held to bar or intercept the pre-existing inchoate right of the husband to recover; and no question was made, in either case, but that the act was constitutional.

In the case of *Snyder* v. *Snyder*, 3 *Barb. S. C. R.* 621, the Supreme Court of New York, in construing the act of that state for the more effectual protection of the property of married women, held that the act was intended only to operate on property and rights acquired subsequent to he passage of the act. That case, however, does not touch the question now before the court. There the husband had obtained possession of the property of the wife, and applied it to his own purposes prior to the passage of the act. It was a suit in equity, by the wife, for a separation from her husband, and for the recovery of the property from him; and the question was, whether the act was intended to operate retrospectively. The court held that was not the intention; that the husband having acquired a legal title to the property, it could not, in any sense, be said to be the property of the wife. And the court added, that a statute affecting rights and liabilities should not be so construed as to act upon those already existing, unless it appeared, from the terms of the statute itself, that such was the intention of the legislature.

In the case now before the court, the property was the property of the wife at the time the act took effect. The husband had no vested interest in it; all he had before the act took effect was a right to acquire such an interest, if he chose to do so, by taking the necessary steps. That was a right derived from the pre-existing common law, and dependant upon it. The statute altered the common law, so far as it gave him that right, before he had exercised it. If that was a violation of the constitutional prohibition, if that impaired the obligation of the marriage contract, it must be because the marriage contract is to be construed as drawing to and incorporating with itself all the legal incidents which at the time of the solemnization of the contract formed the law of husband and wife, of which the right to acquire title to the wife's personal property, by reducing it to possession, was one. But such a construction would restrict the operation of the act to future marriages exclusively. As to marriages consummated prior to the act, it would be of no consequence whether the wife acquired the property before or after the act took effect. Such a construction would conflict directly with all the cases cited.

There can be no doubt that the legislature intended the act to operate as a protection of the rights of property of the wife existing at the time the act took effect. The last clause of the second section, which is not found in the act of New York, settles that question. The property is to be her sole and separate property, as if she were a single female, except so far as the same may be liable for the debts of her husband, "heretofore contracted, by any legal lien." There could be no legal lien in favor of creditors existing at the time the act took effect on property of the wife acquired after the passage of the act.

In *Hurd* v. *Cass*, 9 *Barb. S. C. Rep.* 366, the question was, whether the act of New York operated to cut off the husband's tenancy by the curtesy. The court held that it did not; that the statute allowed the wife to take and hold to her separate use real as well as personal property, and

authorized her to convey the same, or to dispose of it by a valid will executed in conformity to the laws of the state, but was not intended to interfere with the laws of descent in regard to real estate. This decision admits all that is contended for by the defendant in the case before us.

The act of the state of Maine to secure to married women their rights in property is prospective in its express terms. It provides, that "*hereafter* when any woman possessed of property, real or personal, shall marry, &c." And the decisions in that state are in accordance with the words of their statute, in holding that the act only operated on subsequent marriages. *McLellan* v. *Nelson*, 27 *Maine* 129.

I am clear, upon the whole case, that the act of 1852 was intended to protect the personal property of females then married; that it operated to secure to them all personal property in which they had at the time the act took effect an exclusive vested interest; that it barred and intercepted the suspended or inchoate right of the husband to acquire an interest in such property by any proceeding after the act took effect; that, as in this case, the distributive share sought to be recovered by the husband was, at the time the act took effect, the exclusive property of the wife; he not having brought suit or taken any step to reduce it to possession, he cannot now recover it in this action from the defendant, and the demurrer must therefore be sustained.

CITED *in Van Note* v. *Downey,* 4 *Dutch.* 221; *Teneick ads. Flagg,* 5 *Dutch* 32, 33; *Prall* v. *Smith,* 2 *Vr.* 246; *Vreeland* v. *Vreeland's Admr.,* 1 *C E. Gr.* 526.